DECISION
The matter before the court is the defendant's motion to dismiss a criminal complaint charging him with simple assault in violation of § 11-5-3 of the general laws. The complaint was brought on June 24, 1993 by the Rhode Island State Police arising out of an incident alleged to have occurred within the confines of the Tribal Administration Offices of the Narragansett Indian Tribe, located on Route 112 in Charlestown. The facts suggest that the State Police were called to the location by a member of the Tribe.
Defendant moved to dismiss this case on the ground that the state of Rhode Island lacks subject matter jurisdiction over any crimes allegedly occurring within the Tribe's Administration Offices.
The defendant bases his argument upon the premise that the property in question, while not a part of the Narragansett Indian Tribe's "Settlement Lands" acquired pursuant to the Rhode Island Indian Land Claims Settlement Act, 25 U.S.C. § 1701, et. seq. are nonetheless "Indian Country" pursuant to the Indian General Crimes Act. 18 U.S.C. § 1151, 1152 which provides exclusion jurisdiction to certain crimes occurring within "Indian Country":
 The term "Indian country" means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government . . . (b) all dependent Indian community within the borders of the United States . . . and (c) all Indian allotments . . . 18 U.S.C. § 1151.
 § 1152 provides for (tribal) jurisdiction as follows:
 Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses, committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country. This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively. (Emphasis added).
The parties have stipulated that the Narragansett Indian Tribe is a federally acknowledged and recognized sovereign government pursuant to 25 C.F.R. § 83-11(a) as noted at 48 Fed. Reg. 6177-78 (February 10, 1983). Further, the parties have agreed that the alleged incident occurred entirely within the Tribes Administration Offices which are leased from a private party by the Tribe with approval of the federal government and with funds provided to various tribal programs by the federal government. Finally, the parties stipulated that the Narragansett Tribe has a federally funded Tribal Law Enforcement contract with the Bureau of Indian Affairs.
In addition to the foregoing stipulated facts the defendant presented the testimony of two witnesses, Matthew Thomas, then First Councilman of the Tribe and the defendant.
Defendant maintains this complaint should be dismissed on two grounds, first, that while the State of Rhode Island retained criminal jurisdiction over the Settlement Lands, the Settlement Act retained no such jurisdiction over crimes occurring outside the settlement lands. Thus, the defendant maintains the Settlement Act is irrelevant to this case.
Secondly, defendant maintains that the Tribal Administration Offices, located on Route 112 in Charlestown falls within the definition of "Indian Country" for purposes of subject matter jurisdiction; 18 U.S.C. § 1151 et. seq. The state responds that its jurisdiction over crimes occurring by and between members of the Narragansett Indian Tribe was clearly and unequivocally retained in the Land Claims Settlement Act. Further, the state maintains that the Tribal Administration Offices, while located outside the Settlement Lands are not "Indian Country" as that term is defined by 18 U.S.C. § 1151 et. seq.
Background
A. The Settlement Act
The history of the relationship between the State of Rhode Island and the Narragansett Indian Tribe has been outlined in detail in a series of cases heard in the federal courts over the last decade. See Town of Charlestown v. United States1696 F. Supp. 800, 805 (D.R.I. 1988), aff'd without opn. 873 F.2d 1433 (1st cir. 1989); Maynard v. Narragansett Indian Tribe,798 F. Supp. 94 (D.C.R.I. 1992); Narragansett Indian Tribe of RhodeIsland v. Narragansett Electric Co., No. 95-1944, Slip. op. (1st Cir. July 22, 1996).
These cases had their genesis in an effort by the Narragansetts to reclaim aboriginal lands alleged to be unlawfully taken in violation of the Indian Nonintercourse Act.
25 U.S.D. 177.
The original dispute was settled by the parties in 1978 by the execution of a Joint Memorandum of Understanding. The Tribe relinquished all claims to all of the lands in question in exchange for certain state lands retained for the benefit of the Narragansett Indian Tribe, and other valuable consideration.
On September 30, 1978, Congress enacted implementing legislation P.L. 95-395, entitled "Rhode Island Indian Land Claims Settlement Act", 25 U.S.C. § 1701 et. seq. This act clearly and unequivocably includes a grant of both civil and criminal jurisdiction over the Settlement Lands to the State of Rhode Island. Despite a recent campaign of attacks and skirmishes on the validity and scope of this jurisdictional grant, the power of the State of Rhode Island in both civil and criminal matters remains alive and well.
In State of Rhode Island v. Narragansett Indian Tribe, 19 F.3d 685
(1st Cir. 1994), the United States Court of Appeals for the First Circuit had occasion to pass upon the question of whether the state's jurisdiction over the Settlement Lands survived later developments. These developments include subsequent federal recognition of the Narragansetts as an Indian Tribe, the deeding back of the Settlement Lands to the Tribe and finally the Tribe deeding the lands to the Federal Bureau of Indian Affairs as trustee. The court held the grant of jurisdiction to the state remains valid and it includes not only criminal and civil jurisdiction, but civil regulatory jurisdiction as well. Thus the existence and extent of the state's jurisdiction over the Settlement Lands has been finally adjudicated.
The defendant's position that the Settlement Act is irrelevant to this case is incorrect for, if taken to its logical conclusion, the defendant's hypothesis results in the State of Rhode Island having less authority over crimes occurring on lands the Tribe may subsequently acquire (by lease or purchase) then on the very land over which the federal jurisdictional grant extends. Simply put, defendant acknowledges the state's jurisdiction over the Settlement Lands in light of NarragansettIndian Tribe, 19 F.3d 685 (1st Cir. 1994), but argues that since the Settlement Act is silent about after-acquired property, the Settlement Act is irrelevant. The defendant maintains the concept of Indian Country controls this dispute. The defendant fails to explain on what ground the state's power is extinguished on after-acquired lands when its authority remains unimpeached on the settlement lands. Defendant simply suggests that 18 U.S.C. § 1851et. seq., the Indian General Crimes Act precludes the state from enforcing its criminal laws within "Indian Country".
Criminal jurisdiction is the power of a government to administer justice under the law, to prohibit certain behavior and punish violators of its laws. This power generally extends to the limits of a state's territory unless specifically limited by the Federal Constitution and the Congress through the Supremacy Clause.
The defendant can point to no specific act of the Congress which limits the state's jurisdiction over the land in question. The state suggests that the Settlement Act itself where the Tribe surrendered its claim to all lands outside the Settlement Lands, limits the Tribe's ability to extend its sovereignty. Indeed, inNarragansett Indian Tribe of Rhode Island v. NarragansettElectric Company decided July 22, 1996, the First Circuit noted the significance of this issue and specifically declined to decide it until it is developed more fully by the parties in the court below.
However the court did conclude that the housing site which was the subject of the dispute in Narragansett Electric Company
was not a dependent Indian Community and therefore not Indian Country. Narragansett Indian Tribe v. Narragansett ElectricCompany, No. 95-1944, Slip. op at 32, (1st Cir. July 22, 1996.)
B. Indian Country
In order to qualify as Indian Country pursuant to § 1151 of 18 U.S.C. the Tribal Administration Offices, the building where the alleged incident occurred, must be declared a "dependent Indian Community". Courts, in answering this question, have engaged in an inquiry into the function and nature of the community in which the crime occurred, "the ultimate issue being whether the evidence shows that the area was established for the use, occupancy and protection of dependent Indians" United States v.Levesque, 681 F.2d 75, 77 (1st Cir. 1982). The courts have recognized and adopted certain factors which must be weighed for or against an Indian Tribe in deciding whether a given area is in fact a dependent Indian Community. These factors include:
 the nature of the area in question, the relationship of the inhabitants of the area to Indian Tribes and the federal government and the established practice of government agencies toward the area. U.S. v. Martine, 442 F.2d 1022, 1023 (10th Cir. 1971).
This analysis was first adopted by the First Circuit in U.S.v. Levesque 681 F.2d 75 (1st Cir. 1982) which also incorporated as relevant to this analysis the question of whether the federal government has retained title to the land and the authority to enact laws and regulations respecting this land.
Finally, in reaching the ultimate issue, the court found a critical and decisive factor to be whether the lands have been set apart by the federal government for the use, occupancy and protection of dependent Indian peoples. That is whether the federal government has undertaken some action with respect to the lands which indicates an intent to assert jurisdiction over the area. Buzzard v. Oklahoma Tax Commission, 992 F.2d 1073 (10th Cir. 1993).
The First Circuit found, and this court concurs, that theMartine factors weigh in favor of the finding of an Indian Community. However the court refused to find the second critical factor, that this community is a dependent Indian Community for purposes of § 1151.
It is undisputed that the Narragansett Tribe of Indians is a distinct Indian Community that has existed in the area since the earliest European contact. The Tribal Administration Offices are contiguous to the Settlement Lands in Charlestown. However the mere presence of an Indian Community in a particular area does not make it a dependent Indian Community. The First Circuit placed great emphasis on the fact that the Settlement Act extinguishes all claim to aboriginal title to the land in this area. The court declined to weigh that factor in favor of the Tribe.
The second factor, the relationship of the inhabitants of the area to the Indian Tribe and the federal government must weigh in favor of the Tribe. While no person inhabits this building in the residential sense it is one of the centers of Indian life and clearly serves the Indian Community. The parties have stipulated that the Tribe has entered into the lease "with approval of the federal government", the rents being paid out of funds supplied by the federal government from the various federal programs. InNarragansett Electric Company, supra, the First Circuit reversed the trial judge's finding that this significant financial involvement in the housing site including the funding of numerous federal social programs was enough involvement by the federal government to "rise [to] the level of setting apart the land for the use, occupancy and protection of dependent Indian peoples.Buzzard, supra.
The element of cohesiveness in the community has been clearly established. That is, this building is used exclusively by the Narragansett Indian Tribe for the common benefit of members of the Tribe. It is the center of tribal government. However, as the First Circuit noted in Narragansett Electric Company, this factor is not enough to establish the presence of a dependent Indian Community.
The critical factor in this inquiry is whether the federal government retains title to this property and retains the authority to enact regulations and laws. The court finds no evidence to support this factor. This property is a former restaurant owned by a private non-Indian entity and leased to the Tribe on a year to year basis. This factor alone does not defeat a finding of a dependent Indian Community, Narragansett ElectricCompany, but it clearly weighs against the Tribe especially in light of the fact the Narragansett Indian Tribe waived all claims to aboriginal title to this land. There must be a greater federal involvement in the area in light of this fact. Other than approval of the lease and federal financing there is no retained authority by the federal government to enact regulations and laws.
Finally, this area has not been set apart by the federal government for the use, occupancy and protection of dependent Indian peoples. This was the crucial factor in Levesque, 681 F.2d at 77 and in Narragansett Electric Company Slip. op. at 25.
When faced with this issue the courts have squarely held that in limiting the area of a state's sovereign authority, the intent of Congress was to designate as Indian Country only those lands specifically set aside by the federal government for the residence of Tribal Indians who are under federal protection.
In order for an area to be set aside, the First Circuit has decreed that some affirmative action must be taken by the federal government indicating that the land is designated for use by Indians. Narragansett Electric Company, Slip. op at 26. There must be evidence of federal involvement to such a degree as to demonstrate "an intention that the federal government and not the state is the dominant political institution in the area". Id.
(quoting Native Village of Venetie, 1995 W.L. 462232 at 14). This is simply not the case here. Were the land held in trust by the federal government this factor would be satisfied because the trust procedure itself settles the issue of jurisdiction. Id. at 27.
Therefore, the court must conclude that this site was not "set apart" by the federal government to establish this final factor which is, of course, the ultimate issue. This failure defeats the Tribe's efforts to have this court declare this site a dependent Indian Community. The court adopts the First Circuit's holding that,
 Put simply, it is too far a stretch to regard the government agency funding and oversight here as evidencing a federal intent to give the tribe presumptive sovereignty over the . . . site by making it Indian County. Id. at 32.
This court agrees that it is implausible "that a tribe could obtain a valid claim to Indian Country — and thus presumptive sovereignty rights — over theretofore privately held lands just by purchasing them and obtaining financial assistance" Id. at 32, to the complete exclusion of the State of Rhode Island and the absence of any meaningful involvement by the federal government.
Therefore the court finds the Tribal Administration Offices to be privately owned property leased to the Narragansett Indian Tribe and not Indian Country as a matter of law.
Finally, defendant alternately suggests the Tribal Administration Offices fall within § 1151(a) definition of Indian Country which includes "all lands within the limits of any Indian reservation under the jurisdiction of the United States Government." 18 U.S.C. § 1151(a). This argument is without merit. There is simply no evidence, whatsoever, that any land occupied, owned or leased by the Narragansett Indian Tribe is part of a formal reservation or that it is under the jurisdiction of the United States Government. Consequently, this argument must fail.
C. The Question of Tribal Sovereignty
In essence, neither the arrest nor prosecution of the defendant individually or as a member of the Narragansett Tribe of Indians impacts upon the issue of the sovereignty of the Narragansett Indian Tribe.
However woven throughout this proceeding is the suggestion that the Narragansett Indian Tribe had in place its own law enforcement branch of government and this fact, standing alone, defeats the state's efforts at prosecution in this matter.
It is undisputed that the Narragansett Indian Tribe retains its sovereignty and enjoys a government to government relationship with the United States. Maynard, 798 F. Supp at 96. This sovereignty presumably includes a law enforcement function including the prosecution of crimes committed by one Indian against the person or property of another Indian. That being the case, it begs the question to conclude that the State of Rhode Island has no jurisdiction. Defendant has failed to establish in any meaningful way that the fact the Narragansett Indian Tribe retains Tribal sovereignty including a law enforcement function, serves as an absolute bar to state jurisdiction. This jurisdiction is concurrent but not exclusive.
In support of his theory of exclusive jurisdiction defendant points to the recent U.S. District Court case of Federico v.Capital Gaming International et al., slip. op. No. 95-0248P (June 26, 1995) a case which deals with the issue of the sovereign immunity of the Narragansett Indian Tribe and not the question of exclusive criminal jurisdiction. Further, the Tribe itself was the defendant in that case and not an individual member of the Tribe. Thus, the fact of the existence or non-existence of a Tribal Law Enforcement contract is irrelevant to the issues before the court.
Conclusion
For the reasons stated above the court finds the State of Rhode Island to possess subject matter jurisdiction over the conduct alleged to have occurred and the defendants Motion to Dismiss is denied.