**PENOBSCOT NATION and Passamaquoddy Tribe,**
**Plaintiffs,**

v.

**GEORGIA–PACIFIC CORPORATION, Great Northern Paper, Inc. and Champion International Corporation, Defendants,**

**and**

**State of Maine, Intervenor.**

**No. 00–101–B–H.**

United States District Court, D. Maine.

Sept. 26, 2000.

Kaighn Smith, Jr., Melissa A. Hewey, Gregory W. Sample, Drummond, Woodsum & MacMahon, Portland, ME, for Penobscot Nation, plaintiff.

Catherine R. Connors, Matthew D. Manahan, Pierce, Atwood, Portland, ME, for Georgia–Pacific Corporation, defendant.

William R. Stokes, Assistant Attorney General, Augusta, ME, for Maine, State of, intervenor-defendant.

## ORDER ON PLAINTIFFS' MOTION FOR RECONSIDERATION

HORNBY, Chief Judge.

On July 18, 2000, I dismissed the plaintiff Tribes' claims for declaratory and injunctive relief on the basis that, as a result of the well-pleaded complaint rule, there was no federal subject matter jurisdiction under either the general federal question jurisdiction statute, 28 U.S.C.A. § 1331 (West 1993), or the Indian jurisdictional statute, 28 U.S.C.A. § 1362 (West 1993). *See Penobscot Nation v. Georgia–Pacific Corp.*, 106 F.Supp.2d 81, 82 (D.Me.2000).

The Tribes have moved for reconsideration, arguing that federal jurisdiction exists under § 1362 regardless of the well-pleaded complaint rule because the United States could have brought the lawsuit as trustee for the Tribes before enactment of § 1362; and that I have misapplied the well-pleaded complaint rule as it applies to both § 1331 and § 1362 in treating the Tribes' federal issue as a defense. The motion is DENIED. The Tribes' argument about the trustee power is not supported by the caselaw.[1] As for the well-pleaded complaint rule, I conclude that my Order correctly and logically applied Supreme Court and circuit precedents that deal explicitly with that principle. *See Penobscot Nation*, 106 F.Supp.2d at 82–83. I recognize that the result in a recent First Circuit decision seems to be contrary to how I applied the well-pleaded complaint rule. But the well-pleaded complaint rule was never raised in that case by the parties or the courts at either the trial or the appellate level.

This dispute has arisen because the defendant paper companies are using Maine's Freedom of Access Law, 1 M.R.S.A. §§ 401–410 (West 1989 & Supp. 1999), to seek access to certain of the Tribes' records about water resources and quality. The plaintiff Tribes filed this lawsuit in federal court invoking federal law and seeking declaratory and injunctive relief to prevent the paper companies from pursuing the application of the state Freedom of Access Law in state court. I use the Tribes' own characterization of the dispute in the opening lines of their memorandum of law in opposition to the paper companies' motion to dismiss:

> This action arises out of [the paper companies'] attempt to impose the regulatory provisions of Maine's Freedom of Access Laws, 1 M.R.S.A. §§ 401 *et seq.* ("MFAL") upon the Penobscot Nation and the Passamaquoddy Tribe (the "Tribes"). When [the paper companies] sought to impose MFAL on the Tribes, the Tribes commenced this action on May 18, 2000 to protect their right to be free from state regulation pursuant to

---

1. The Tribes argue that the Department of the Interior historically could have brought this lawsuit. As I said in my original Order, the only authorities that speak to this topic describe the historic trustee enforcement power as extending to actions involving land, personalty, and money, *see Penobscot Nation*, 106 F.Supp.2d at 85, none of which is involved here. The Tribes point out that other issues of sovereignty are implicated by the precedents, but they have not pointed me to any case where such issues were raised independently of trustee actions concerning land, personalty and money. Instead, "[t]he Tribes note that it is difficult to divorce the right of tribes to be free from state regulatory authority from tribal rights in land or personalty."

Pls.' Mot. for Recons. of Order on Defs.' Motion to Dismiss and Vacate J. at 13 n. 7. In fairness, I agree that the question of section 1362's scope is difficult, given *Blatchford*'s and *Moe*'s cryptic utterances and lower courts' frequent failure to address the applicability of the well-pleaded complaint rule. *See Blatchford v. Native Village of Noatak*, 501 U.S. 775, 783–85, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991); *Moe v. Confederated Salish and Kootenai Tribes of the Flathead Reservation*, 425 U.S. 463, 472–75, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976). But extending section 1362 to this unique dispute reads *Blatchford* and *Moe* more broadly than a lower court can.

the Maine Indian Claims Act of 1980, 25 U.S.C. § 1721 *et seq.* (the "Settlement Act").

Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss or Stay at 1. Similarly, in their motion for reconsideration, the Tribes concede that "state law creates Defendants' cause of action under MFOAL," but argue that "[e]ven though" that is so, federal jurisdiction exists because the federal issue of tribal sovereignty will inevitably come up in the lawsuit. Pls.' Mot. for Recons. of Order on Defs.' Mot. to Dismiss and Vacate J. at 7. For the reasons I set forth in my Order of July 18, 2000, conventional application of the well-pleaded complaint rule treats the Tribes' federal issue as a defense to the paper companies' state law claim. *See Penobscot Nation,* 106 F.Supp.2d at 82–83. The result is that federal jurisdiction is missing.

To avoid the well-pleaded complaint rule, the Tribes argue that the paper companies' access effort itself depends on federal law and thereby provides federal jurisdiction. That is so, they say, because the state Implementing Act, 30 M.R.S.A. §§ 6201–6214 (West 1996), on which the paper companies rely to treat the Tribes as subject to certain municipal responsibilities like Maine's Freedom of Access Law, has an explicit exception or proviso: "provided, however, that internal tribal matters ... shall not be subject to regulation by the State." 30 M.R.S.A. § 6206(1). The First Circuit has held that interpretation of this "tribal matters" exception raises a question of federal law. *See Penobscot Nation v. Fellencer,* 164 F.3d 706, 708 (1st Cir.), *cert. denied,* 527 U.S. 1022, 119 S.Ct. 2367, 144 L.Ed.2d 771 (1999); *Akins v. Penobscot Nation,* 130 F.3d 482, 485 (1st Cir.1997). The Tribes conclude, therefore, that the paper companies' claim against

them will have to involve consideration of that federal issue and, as a result, confers federal jurisdiction over the Tribes' declaratory judgment lawsuit.

Under well-pleaded complaint analysis, however, that is not enough. The paper companies are asserting that Maine's Freedom of Access Law (a state statute) compels the Tribes to open their records as if they were municipalities because of language in the Implementing Act (another state statute), making the Tribes "subject to all the duties, obligations, liabilities and limitations of a municipality of and subject to the laws of the State." 30 M.R.S.A. § 6206(1). Now the other language in the Implementing Act that the Tribes point to (the "provided, however" language) well may be interpreted to give them a successful defense to the coverage the paper companies assert—a federal defense, according to *Fellencer* and *Akins,* because Congress ratified it. But under well-pleaded complaint analysis it still is a defense to the paper companies' claim that Maine's Freedom of Access Law applies to the Tribes.[2] Thus, it does not confer federal jurisdiction under the well-pleaded complaint rule; instead, it is the classic case where jurisdiction does not exist.

The Tribes argue that the paper companies cannot make the case that the state Freedom of Access Law applies, however, without using federal law, and therefore that jurisdiction exists even under the well-pleaded complaint rule. The argument goes as follows. The Freedom of Access Law, by its terms, applies to municipalities. It is the separate Implementing Act upon which the paper companies must rely to hold the Tribes to some of the responsibilities of municipalities. But the Implementing Act could not become effective without ratification by Congress.[3]

2. It is the Tribes, not the paper companies, who wish to rely upon the language "internal tribal matters," and they are doing so to defend against the assertion that the Freedom of Access Law otherwise applies to them.

3. The Maine Legislature explicitly stated that the Implementing Act would not become ef-

fective without ratification, *see* Act to Implement Maine Indian Claims Settlement, 1979 Me.Laws 732, § 31, but that is less important to the Tribes' argument than the assertion that only Congress can permit this kind of regulation of Indian tribes in any event.

Therefore, the paper companies' claim presents a federal claim under the well-pleaded complaint rule.

This argument fails because of Justice Cardozo's 1936 opinion in *Gully v. First National Bank.* Quoting in part from an earlier decision, he said:

> 'The federal nature of the right to be established is decisive—not the source of the authority to establish it.' Here the right to be established is one created by the state. If that is so, it is unimportant that federal consent is the source of state authority. To reach the underlying law we do not travel back so far. By unimpeachable authority, a suit brought upon a state statute does not arise under an act of Congress or the Constitution of the United States because prohibited thereby. With no greater reason can it be said to arise thereunder because permitted thereby.

299 U.S. 109, 116, 57 S.Ct. 96, 81 L.Ed. 70 (1936) (citation omitted). The same conclusion applies here. The fact that Congress ratified what Maine did and thereby permitted Maine to legislate concerning the Tribes—or that it prohibited Maine from doing so—does not suffice to let the Tribes meet the test for "arising under" federal jurisdiction.[4]

But as I have said, the outcome of one recent First Circuit decision is difficult to square with this analysis. In *Fellencer,* the First Circuit ruled that the Penobscot Nation was entitled to a federal court injunction against the state court lawsuit of a terminated female employee who was suing the Nation for state-prohibited sex discrimination. *See* 164 F.3d at 707. The Nation's federal "claim" was that federal law—specifically, the "internal tribal matters" exception that the Tribes also assert here—prevented Maine courts from applying the Maine Human Rights Act. Under well-pleaded complaint analysis, that "claim" sounds like a federal defense that the Nation could have asserted in state court—not enough to confer federal jurisdiction. Nevertheless, without mentioning the well-pleaded complaint rule, *Fellencer* assumed that jurisdiction existed. I have examined the trial court record from this District and discovered that the well-pleaded complaint rule was never briefed. The lawyer who represented the Penobscot Nation in that case is the lawyer for the Tribes in this case, and he informed me at oral argument that the well-pleaded complaint rule likewise was never mentioned on appeal. I do not therefore read *Fellencer* as having rejected the well-pleaded complaint rule for Indian cases.[5]

The Tribes argue that the consequence of this reasoning is to deprive them of the federal protection of their sovereignty—that it is an affront to that sovereignty to have to appear in state court to assert the

---

4. Moreover, the Tribes would undoubtedly still raise their federal "internal tribal matters" defense even if Maine by separate, unratified legislation, imposed the MFOAL explicitly and directly upon them. At bottom, the Tribes dislike the well-pleaded complaint rule when issues affecting their sovereignty are at stake.

5. *Akins,* the case from which *Fellencer* drew the presumption that "internal tribal matters" raises a federal issue, found no subject matter jurisdiction for other reasons and did not address the well-pleaded complaint rule. In my earlier Order, I pointed to *National Farmers Union Ins. Cos. v. Crow Tribe of Indians,* 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985), as possibly being an anomaly under the well-pleaded complaint rule. *See Penobscot Nation,* 106 F.Supp.2d at 83 n. 3. In retrospect, I conclude that *National Farmers* and other cases challenging tribal court proceedings on the basis of federal law, *see, e.g., Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth.,* 207 F.3d 21, 28 (1st Cir.2000), do not fit the well-pleaded complaint rule for an additional reason. There is no appellate review of a tribal court decision outside the tribal courts and therefore no way to address any federal issue even in the United States Supreme Court unless a federal action for declaratory/injunctive relief is permitted. Thus, the assumption of the well-pleaded complaint rule—that the federal issue will get attention from state courts that are bound to apply federal law by virtue of the Supremacy Clause, U.S. Const. art. VI, and that United States Supreme Court review is available if they fail to—does not apply.

defense and even worse if the state courts reject it. The premise of the well-pleaded complaint rule, however, is that federal issues can be handled perfectly well by state courts (indeed, there is no constitutional requirement that Congress establish inferior federal courts) and are to be addressed there when they are a defense rather than part of the federal claim. Not surprisingly, the State, an intervenor in this lawsuit, claims that it would be affronted if the opposite result were reached, because then every assertion of its jurisdiction under the Implementing Act would have to be raised in federal court, whereas part of the Indian Land Claims Settlement, it says, was to confirm state jurisdiction in enumerated areas. *See Passamaquoddy Tribe v. Maine,* 75 F.3d 784, 787 (1st Cir.1996) ("Among other things, the Settlement Act ... submitted the Passamaquoddies, the Penobscots, and their tribal lands to the State's jurisdiction."). Neither of these arguments affects the outcome here. The well-pleaded complaint rule exists. It has been criticized by the commentators, *see* 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3566, at 85, 89–90 (2d ed.1984), but until it is overruled, I simply apply it.

I do emphasize what I said in my earlier Order: this decision in no way intimates that the Tribes do or do not have a serious federal defense to the application of Maine's Freedom of Access Law. This decision is solely about what forum shall hear that argument.[6]

Finally, I point out that cases involving Indian tribes often fail to address the operation of the well-pleaded complaint rule. Thus, it would be useful to have a clear appellate ruling that it does or does not

apply in cases where issues of Indian sovereignty are in dispute.

So Ordered.

---

**6.** It has come to my attention that the Maine Superior Court has issued a decision and order finding that it has jurisdiction in this dispute, that the Tribes are subject to Maine's Freedom of Access Law, and that the paper companies' requests under the Freedom of Access Law do not implicate any internal tribal matter under the Implementing Act. *See Great N. Paper Co. v. Penobscot Nation,* No. CV–00–329, Me.Super.Ct., Sept. 19, 2000, at 3–9. That decision does not affect my analysis.