**PENOBSCOT NATION and Passamaquoddy Tribe,**
Plaintiffs,

v.

**GEORGIA–PACIFIC CORPORATION, Great Northern Paper, Inc. and Champion International Corporation,** Defendants.

and

**State of Maine, Intervenor.**

**No. CIV.00–101–B–H.**

United States District Court,
D. Maine.

July 18, 2000.

---

8. Because I grant summary judgment, three other motions *in limine* filed by Mazda are

---

Kaighn Smith, Jr., Melissa A. Hewey, Gregory W. Sample, Drummond, Woodsum & Macmahon, Portland, ME, for Penobscot Nation, Passamaquoddy Tribe, plaintiffs.

Catherine R. Connors, Matthew D. Manahan, Pierce, Atwood, Portland, ME, for Georgia–Pacific Corp., Great Northern Paper, Inc., Champion Intern. Corp., defendants.

William R. Stokes, Assistant Attorney General, Augusta, ME, for Maine, State of, intervenor-defendant.

MOOT.

## ORDER ON DEFENDANTS' MOTION TO DISMISS

HORNBY, Chief Judge.

The plaintiff Indian tribes assert federal subject matter jurisdiction in this case on two bases: general federal question jurisdiction, 28 U.S.C.A. § 1331 (West 1993), and the Indian jurisdictional statute added in 1966, 28 U.S.C.A. § 1362 (West 1993). I conclude that neither will support this federal lawsuit.

## BACKGROUND

Three paper companies (the defendants) threatened to sue the Penobscot Nation and Passamaquoddy Tribe [1] in state court to compel them to turn over certain documents under the Maine Freedom of Access Act. After the Tribes received notice from the paper companies but before the paper companies could get to state court under the statutorily required waiting period, the Tribes filed this federal lawsuit against them seeking an injunction against any state court lawsuit and a declaratory judgment that the Maine Freedom of Access Act violates "their federal right to be free of such state regulation." Compl. ¶ 10. The Tribes rely in part upon the Maine Indian Claims Settlement Act of 1980, 25 U.S.C.A. § 1721 *et seq.* (West 1983 & Supp.2000). The paper companies have moved to dismiss for lack of federal subject matter jurisdiction.

## ANALYSIS

### A. Section 1331

The general federal question jurisdiction statute gives federal district courts original jurisdiction of "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C.A. § 1331. "Arising under" has been narrowly interpreted: when a plaintiff has a claim creat-

ed by state law and a defendant has a federal defense, the Supreme Court has made clear that the lawsuit does not "arise under" federal law and that there is no general federal question jurisdiction. *See Franchise Tax Bd. of State of California v. Construction Laborers Vacation Trust,* 463 U.S. 1, 9–12, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). This has come to be known as the "well-pleaded complaint rule," "the basic principle marking the boundaries of the federal question jurisdiction of the federal district courts." *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *see also American Nat. Red Cross v. S.G.,* 505 U.S. 247, 258, 112 S.Ct. 2465, 120 L.Ed.2d 201 (1992) ("The 'well-pleaded complaint' rule applies only to statutory 'arising under' cases. . . .") (citations omitted). As a result, the plaintiff cannot file the case in federal court, *see, e.g., Iowa Management & Consultants, Inc. v. Sac & Fox Tribe,* 207 F.3d 488, 489 (8th Cir. 2000); *TTEA v. Ysleta Del Sur Pueblo,* 181 F.3d 676, 681 (5th Cir.1999), and the defendant cannot remove it to federal court, *see Oklahoma Tax Com'n v. Graham,* 489 U.S. 838, 840–41, 109 S.Ct. 1519, 103 L.Ed.2d 924 (1989) (per curiam).[2]

■ The answer is the same if the defendant acts first and brings a declaratory judgment action in federal court seeking a declaration that its federal defense trumps the plaintiff's state law claim. Although the defendant has thereby become the plaintiff and ostensibly has pleaded a claim that is federal, there still is no federal jurisdiction. Specifically, in 1983 the United States Supreme Court announced that a 1950 decision (*Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194) "has come to stand for the proposition that 'if, but for the availability of the declaratory judgment procedure, the

---

1. The plaintiffs refer to themselves collectively as the Tribes and I shall do the same.

2. Except in instances where federal law preempts the field, *see Metropolitan Life,* 481

U.S. at 63–67, 107 S.Ct. 1542; *Oklahoma v. Wyandotte Tribe,* 919 F.2d 1449, 1450 (10th Cir.1990), an argument not asserted in this case.

federal claim would arise only as a defense to a state created action, jurisdiction is lacking.'" *Franchise Tax Bd.*, 463 U.S. at 16, 103 S.Ct. 2841; *quoting* 10A Charles A. Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 2767, at 744–45 (2d ed.1983). This statement made definitive what had been suggested in *Public Service Commission v. Wycoff Co.*, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952):

> Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court. If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim. This is dubious even though the declaratory complaint sets forth a claim of federal right, if that right is in reality in the nature of a defense to a threatened cause of action.

344 U.S. at 248, 73 S.Ct. 236.[3]

■ Here, the Tribes claim that federal law prevents the application to them of Maine's Freedom of Access Act. Perhaps they are correct (I express no view) but, if so, that is a matter to present to the courts of the State of Maine in defending against the paper companies' threatened lawsuit seeking to enforce the state law. Under the well-pleaded complaint rule as it applies to section 1331, that potential defense to the paper companies' state lawsuit does not furnish a basis for federal court jurisdiction in this lawsuit. The Tribes could not remove the paper companies' lawsuit from state court on the basis of their federal defense, and they cannot accomplish the same goal by preemptively filing their federal defense here first.[4]

3. There is confusing language in *National Farmers Union Ins. Companies v. Crow Tribe of Indians*, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985). There, the Supreme Court stated:

> The question whether an Indian tribe retains the power to compel a non-Indian property owner to submit to the civil jurisdiction of a tribal court is one that must be answered by reference to federal law and is a "federal question" under § 1331. Because petitioners contend that federal law has divested the Tribe of this aspect of sovereignty, it is federal law on which they rely as a basis for the asserted right of freedom from Tribal Court interference. They have, therefore, filed an action "arising under" federal law within the meaning of § 1331.

471 U.S. at 852–53, 105 S.Ct. 2447 (footnote omitted). As phrased this federal issue sounds like a defense. But such a reading makes it inconsistent with the well-pleaded complaint rule, which the Supreme Court has otherwise endorsed. Alternatively, *National Farmers* can be read to say that a Tribe's assertion of power over an outsider must be premised upon federal law. This reading makes it parallel to *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974) (dealing with a land claim), and consistent with the well-pleaded complaint rule. *See Chilkat Indian Village v. Johnson*, 870 F.2d 1469, 1473–75 (9th Cir. 1989) (citing *Oneida* and *Farmers Union* in support of federal jurisdiction in a case that presented a "close" question whether the Village's claim to enforce its ordinance arose under federal law).

4. Here, the Tribes seek injunctive relief as well as a declaratory judgment, but the parties have not analyzed whether that makes a difference. According to the First Circuit, "when the injunctive relief sought in reality does no more than effectuate the declaratory judgment by preventing the application of state law, the *Wycoff* rule still applies." *Playboy Enter., Inc. v. Public Serv. Comm'n*, 906 F.2d 25, 30 n. 7 (1st Cir.1990). If the Tribes were seeking to enjoin state officials, federal jurisdiction would exist, *see Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), but the better view is that where, as here, private parties are defendants, the analysis is the same as for the declaratory judgment cause of action. "[I]t ought to be held that there is no federal jurisdiction of an action for a private party that federal law has preempted a duty he would otherwise owe to another private party." 13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and*

## B. Section 1362

■ Section 1362 gives federal courts original jurisdiction of "all civil actions, brought by an Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States." 28 U.S.C.A. § 1362. The "arises under" language is remarkably parallel to that of section 1331. Should the analysis of claims, defenses and declaratory judgments/injunctions, then, be any different than it is for section 1331? Although the precedents are less definitive for section 1362 and although the Supreme Court has recognized some difference between the two statutes, I conclude that in this case there is likewise no jurisdiction under section 1362.

This jurisdictional statute was adopted in 1966. *See* Pub.L. 89–635, 80 Stat. 880. At the time, section 1331 had a requirement that at least $10,000 be at stake. *See* Pub.L. 85–554, 72 Stat. 415. In the Second Circuit, Judge Friendly concluded that section 1362's "sole purpose" was to eliminate section 1331's jurisdictional amount for lawsuits properly brought by Indian tribes and that otherwise the jurisdictional issues were the same. *See Oneida Indian Nation v. County of Oneida,* 464 F.2d 916, 920 n. 4 (2d Cir.1972), *rev'd on other grounds,* 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974). Judge Lumbard dissented, arguing that section 1362 should be interpreted more broadly and that, unlike section 1331, it should not be limited by the well-pleaded complaint rule "at least until the Supreme Court has passed on the question." 464 F.2d at 924–25. The Ninth Circuit agreed with Judge Lumbard. *See Fort Mojave Tribe v. Lafollette,* 478 F.2d 1016, 1018 (9th Cir.1973). The Friendly–

Lumbard dispute went to the Supreme Court in 1974, but was not resolved. *See Oneida Indian Nation,* 414 U.S. at 682, n. 16, 94 S.Ct. 772. Accepting the premise of the well-pleaded complaint rule for purposes of both section 1331 and section 1362, the Supreme Court found that the underlying complaint in *Oneida* did in fact state a federal claim. 414 U.S. at 667, 682 n. 16, 94 S.Ct. 772. The Supreme Court declined, therefore, to reach the argument that section 1362, in addition to eliminating the jurisdictional amount, was "intended to expand the scope of 'arising under' jurisdiction in the District Courts, beyond what judicial interpretations of that language have allowed under § 1331...." *Id.*

In 1991, however, the Supreme Court seemed to endorse Judge Friendly's narrow reading of section 1362. In *Blatchford v. Native Village of Noatak,* 501 U.S. 775, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991), the Court said:

> Considering the text of § 1362 in the context of its enactment, one might well conclude that its sole purpose was to eliminate any jurisdictional minimum for "arising under" claims brought by Indian tribes. Tribes already had access to federal courts for "arising under" claims under § 1331, where the amount in controversy was greater than $10,000; for all that appears from its text, § 1362 merely extends that jurisdiction to claims below that minimum. Such a reading, moreover, finds support in the very title of the Act that adopted § 1362: "To amend the Judicial Code to permit Indian tribes to maintain civil actions in Federal district courts without regard to the $10,000 limitation, and for other purposes." 80 Stat. 880.

501 U.S. at 784, 111 S.Ct. 2578.[5] But *Blatchford* also recognized that a previous

---

*Procedure* § 3566, at 102 (2d ed.1984). The First Circuit has said that it does not understand the meaningfulness of this distinction, but follows it. 906 F.2d at 30. I note that the State of Maine moved to intervene as a defendant and on July 7, 2000, I granted the

motion for lack of any opposition, but the Tribes have asserted no claims against state actors.

**5.** The author of *Blatchford* (Scalia, J.) does not rely on legislative history. But the legis-

decision, *Moe v. Confederated Salish and Kootenai Tribes*, 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976), had found an undefined "something more" in section 1362. 501 U.S. at 784, 111 S.Ct. 2578.[6] According to *Blatchford*, *Moe* means that " 'at least in some respects' "—not "generally"—Indian tribes have broader access to federal courts, the way the United States would have if it were suing as trustee for the tribes. *Id.* (quoting 425 U.S. at 473, 96 S.Ct. 1634).[7]

The question, then, is what that "something more" means in this context. The class of cases in which the United States might bring suit as trustee for Indian tribes seems to be narrow. Some treatise writers and courts perceive it as limited to suits to protect federally derived real property rights, *see, e.g.*, 13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3579, at 263–64,[8] or perhaps related rights against taxation. Another treatise reads the trustee power more broadly, as extending to monetary relief and personalty, in addition to land. *See* Rennard Strickland, ed., *Felix S. Cohen's Handbook of Federal Indian Law* at 310 (1982 ed.). Although the Tribes in this case speak generally about the trust power, they make no argument that it makes their case fit the *Moe/Blatchford* exception. Certainly, the controversy in this case does not involve land, personalty or monetary recovery. In fact, most lower court references to section 1362 after *Blatchford* have proceeded to treat it as virtually identical

lative history seems to support *Blatchford*. The House Report accompanying section 1362 stated:

> In providing for original jurisdiction of all civil actions of this type, the bill has the effect of removing the $10,000 jurisdictional requirement which presently applies as to such actions by reason of the provisions of section 1331 of the same chapter of title 28. The district courts now have jurisdiction over cases presenting Federal questions brought by the tribes when the amount in dispute exceeds $10,000. Enactment of this bill would merely authorize the additional jurisdiction of the court over those cases where the tribes are not able to establish that the amount in controversy exceeds that amount.

H.R.Rep. No.2040, *reprinted in* 1966 U.S.C.C.A.N. 3145, 3146. Elsewhere the House Report recounts the testimony of a Department of Interior representative and concludes:

> This bill would therefore authorize the addition of only those cases ... where the tribes have not been able to show that the amount in controversy exceeds $10,000, and the Government for some reason does not want to prosecute the case in behalf of the tribe. *Id.* at 3147.

**6.** *Moe* ruled that section 1362 allowed a tribe to sue in federal court for injunctive relief from state taxation, relief that a private entity could not obtain because of 28 U.S.C.A. § 1341. *See* 425 U.S. at 472–75, 96 S.Ct. 1634.

**7.** In 1983, the Supreme Court had observed in a footnote:

> Section 1362 was passed in 1966 in order to give Indian tribes access to federal court on federal issues without regard to the $10,000 amount-in-controversy requirement then included in 28 U.S.C. § 1331, the general federal question jurisdictional statute. Congress contemplated that § 1362 would be used particularly in situations in which the United States suffered from a conflict of interest or was otherwise unable or unwilling to bring suit as trustee for the Indians, and its passage reflected a congressional policy against relegating Indians to state court when an identical suit brought on their behalf by the United States could have been heard in federal court. *Arizona v. San Carlos Apache Tribe of Arizona*, 463 U.S. 545, 561 n. 10, 103 S.Ct. 3201, 77 L.Ed.2d 837 (1983).

**8.** *See also Wilson v. Omaha Indian Tribe*, 442 U.S. 653, 657 n. 1, 99 S.Ct. 2529, 61 L.Ed.2d 153 (1979) ("[T]he United States is entitled to go into court as trustee to enforce Indian land rights.") (construing *Heckman v. United States*, 224 U.S. 413, 32 S.Ct. 424, 56 L.Ed. 820 (1912)). In *Joint Tribal Council of the Passamaquoddy Tribe v. Morton*, 528 F.2d 370 (1st Cir.1975), the First Circuit stated: "We emphasize what is obvious, that the 'trust relationship' we affirm has as its source the Nonintercourse Act, meaning that the trust relationship pertains to land transactions which are or may be covered by the Act, and is rooted in rights and duties encompassed or created by the Act." *Id.* at 379.

to section 1331.[9] The Tenth Circuit has said:

> Although § 1362 clearly removed some jurisdictional impediments for Indian tribes, it did not eliminate the requirement that there be a statutory or constitutional underpinning for the cause of action. *See Gila River [Indian Community v. Henningson, Durham & Richardson]*, 626 F.2d [708, 714 (9th Cir. 1980)]* ("Congress used 'arising under' language in section 1362 that is identical to that contained in section 1331."); *see also Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 682 n. 16, 94 S.Ct. 772, 784 n. 16, 39 L.Ed.2d 73 (1974) (declining to find § 1362 broader than § 1331). For the same reasons that plaintiffs cannot bring this action under § 1331, they also cannot assert jurisdiction under § 1362.

*Western Shoshone Business Council v. Babbitt*, 1 F.3d 1052, 1058–9 (10th Cir. 1993) (internal citation omitted)[10]; *accord Sac & Fox Nation v. Cuomo*, 193 F.3d 1162, 1166 n. 3 (10th Cir.1999) ("Congress enacted § 1362 before it had amended § 1331 to eliminate the amount-in-controversy requirement. Its purpose was to exempt Indian tribes from that requirement, and it is well established that invoking § 1362 does not change a plaintiff tribe's duty to show that its complaint raises a substantial federal question.") (citing 1 F.3d 1052); *TTEA*, 181 F.3d at 682 ("28 U.S.C. § 1362[ ] adds nothing to our immediate question.... The 'arising under' language is the same as that found in 28 U.S.C. § 1331, the general grant of federal question jurisdiction.").[11]

In sum, the "arising under" language of the two jurisdictional statutes is in all material respects comparable; the modern caselaw reads them as largely equivalent; and even the "something more" of *Moe* and *Blatchford* seems to be limited to suits the United States might have brought as trustee, whereas the Penobscot Nation and Passamaquoddy Tribe have not argued that this lawsuit could have been brought by the United States under its trustee powers. I conclude that the well-pleaded complaint rule analysis of section 1331 applies equally to the assertion of jurisdiction here under section 1362, and that there is no federal jurisdiction in this case.

The defendants' motion to dismiss is **GRANTED.**

**SO ORDERED.**

---

9. *See* John B. Oakley, *Prospectus for the American Law Institute's Federal Judicial Code Revision Project*, 31 U.C. Davis L.Rev. 855, 932–33 and n.338 (1998), for a summary of the pre-*Blatchford* caselaw on the well-pleaded complaint rule as it applies to section 1362.

10. Before *Blatchford*, the Tenth Circuit seems to have taken a broader view of section 1362. *See United Keetoowah Band of Cherokee Indians v. Oklahoma*, 927 F.2d 1170, 1173 (10th Cir.1991) ("[A]n action such as this by a tribe asserting its immunity from the enforcement of state laws is a controversy within § 1362 jurisdiction as a matter arising under the Constitution, treaties or laws of the United States") (citations omitted).

11. There may also be cases that have simply missed the issue. *See, e.g., Forest County Potawatomi Community v. Doyle*, 803 F.Supp. 1526, 1532–33 (W.D.Wis.1992) (apparently treating the federal "defense" as ground for a declaratory judgment and preliminary injunction action even under the well-pleaded complaint rule with no reference to *Franchise Tax Board, Skelly Oil* and *Wycoff*), *appeal dismissed as moot*, 7 F.3d 238 (7th Cir.1993) (unpublished). Alternatively, as a gambling case this case might be distinguished on the basis of complete preemption. *See* n.2 *supra.*