# United States Court of Appeals
## For the First Circuit

No. 00-2265

PENOBSCOT NATION, ET AL.,

Appellants,

v.

GEORGIA-PACIFIC CORPORATION, ET AL.,

Appellees.

_____

STATE OF MAINE,

Defendant, Intervenor-Appellee,

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, <u>U.S. District Judge</u>]

_____

Before

Boudin, <u>Circuit Judge</u>,

Stahl, <u>Senior Circuit Judge</u>

and Lynch, <u>Circuit Judge</u>.

_____

<u>Kaighn Smith, Jr.</u> with whom <u>Gregory W. Sample</u> and <u>Drummond Woodsum & MacMahon</u> were on brief for appellants.
<u>Catherine R. Connors</u> with whom <u>Matthew D. Manahan</u> and <u>Pierce Atwood</u> were on brief for appellees.
<u>William R. Stokes</u>, Assistant Attorney General, with whom <u>Andrew Ketterer</u>, Attorney General, and <u>Paul Stern</u>, Deputy Attorney General, were on brief for defendant, intervenor-appellee.

BOUDIN, Circuit Judge. The appellants in this case, the Penobscot Nation and the Passamaquoddy Tribe ("the Tribes"), occupy tribal lands in Maine. The corporate appellees--Georgia-Pacific Corp., Great Northern Paper, Inc., and Champion International Corp. ("the companies")--operate pulp and paper mills that discharge waste water in rivers near or flowing through the Tribes' reservations. A dispute developed between the Tribes and the State of Maine as to the regulation of waste water discharge under the Clean Water Act, 33 U.S.C. §§ 1342(b), 1377 (1994).

Concerned that the Tribes would seek to regulate their activities, the companies requested that the Tribes turn over broad categories of documents bearing on such (potential) regulation, including efforts by the Tribes to secure authority to regulate and pertinent agreements between the Tribes and federal agencies. The companies' demand, made on May 10, 2000, was based on Maine's Freedom of Access Act ("the Maine Access Act"), Me. Rev. Stat. Ann. tit. 1 §§ 401-10 (West 1989 & Supp. 2000). Under Maine law, the Tribes are regulated in certain

respects as municipalities, and municipalities are covered by the Access Act.

The Tribes then brought the present lawsuit against the companies in federal district court to obtain injunctive and declaratory relief debarring the companies from obtaining the documents they sought. The substance of the Tribes' position was that a settlement between Maine and the Tribes, reflected in both Maine law and a federal statute, precluded state regulation of "internal tribal matters" and that applying the Maine Access Act as sought by the companies would impermissibly regulate the Tribes' internal affairs. This federal suit was filed on May 18, 2000.

On May 22, the day before they were served with the federal complaint, the companies brought suit against the Tribes in the Maine Superior Court. Invoking the Maine Access Act, Me. Rev. Stat. tit. 1 § 409(1), the companies demanded that the Tribes produce the documents previously sought. In this state-court suit, the Tribes resisted the demand by asserting, inter alia, that the internal affairs limitation in the settlement meant that the Maine Access Act could not validly be applied to require the Tribes to produce the documents. The same question as to the breadth of the limitation was thus posed in both courts.

The federal district court acted first, ruling on July 18, 2000, that it lacked jurisdiction to entertain the Tribes' suit for declaratory and injunctive relief against the companies. Penobscot Nation v. Ga.-Pac. Corp., 106 F. Supp. 2d 81, 86 (D. Me. 2000) ("Penobscot I"). The court assumed that the internal affairs limitation could comprise a federal-law defense if the companies sued the Tribes under the Maine Access Act; but it ruled that under the well-pleaded complaint rule, the anticipatory assertion of such a defense in a suit by the Tribes did not create a case "arising under" federal law for purposes of the general federal-question jurisdiction statute, 28 U.S.C. § 1331, nor under the parallel language of section 1362, the special Indian jurisdiction statute.[1] Id. at 83-84. The court thereafter (on September 26, 2000) denied reconsideration. Penobscot Nation v. Ga.-Pac. Corp., 116 F. Supp. 2d 201, 205 (D. Me. 2000) ("Penobscot II").

Shortly before the denial of reconsideration, the Maine Superior Court ruled on the merits of the companies' suit

---

[1]Section 1332 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1332. Section 1362, entitled "Indian tribes," states that "[t]he district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States." Id. § 1362.

-4-

against the Tribes to enforce the Maine Access Act. Great N. Paper, Inc. v. Penobscot Indian Nation, No. CV-00-329, slip op. at 9 (Me. Super. Ct. Sept. 19, 2000). The state court ruled that the demand for documents did not contravene the internal affairs limitation and ordered the Tribes to produce the documents immediately, save for conventionally privileged documents which needed only to be logged. The Tribes refused, were held in contempt, and appealed to the Maine Supreme Judicial Court. The Tribes also appealed to us from the district court's dismissal of their federal suit.

On May 1, 2001, while the present appeal was pending before us awaiting decision, the Supreme Judicial Court decided the state appeal. Great N. Paper, Inc. v. Penobscot Nation, 770 A.2d 574, 592 (Me. 2001). It ruled that the internal affairs limitation did protect the Tribes from having to produce documents reflecting internal deliberations about the waste water issue, but not from turning over under the Maine Access Act any correspondence between the Tribes and federal agencies on that issue. Id. The court vacated the lower court's judgment and contempt ruling and remanded for production of the narrower category of materials.

Because the district court dismissed for want of federal jurisdiction based on rulings of law, our review is de

novo.  Mills v. Maine, 118 F.3d 37, 41 (1st Cir. 1997).  To sum up our conclusion at the outset, we think that whether the Tribes' claims "arise under" federal law within the meaning of either section 1331 or section 1362 is a difficult question; but the answer is now irrelevant in this case because the Maine Supreme Judicial Court has decided the merits of the underlying dispute, and any further proceedings in the federal district court are controlled by res judicata doctrine and would be pointlessly duplicative.

Understanding the jurisdictional issue requires a short excursion.  The Tribes in this case occupy a status, and are subject to a legal framework, that is atypical.  The federal Maine Indian Claims Settlement Act ("the Settlement Act"), 25 U.S.C. §§ 1721-35 (1994), and the Maine Implementing Act, Me. Rev. Stat. Ann. tit. 30 §§ 6201-14 (West 1996 & Supp. 2000), capped a settlement, reached in 1980, between the Tribes and the State of Maine involving disputes as to whether the Tribes should be recognized at all and as to their claimed ownership of large tracts of land in Maine.  In the settlement, the Tribes gave up much of their land claims but got recognition, trust funds, title to designated reservations, and certain regulatory

powers within those lands.  See 25 U.S.C. §§ 1723-25; Me. Rev. Stat. Ann. tit. 30 §§ 6205-10.[2]

However, partly as a result of the Tribes' disputed status, the State of Maine, as part of the settlement, obtained legal authority over the Tribes exceeding the usual state authority over native American tribes.  The Tribes were for most purposes "subject to all the laws of the State of Maine."  25 U.S.C. § 1721(b)(4); accord id. § 1725; Me. Rev. Stat. Ann. tit. 30 § 6204.  The Tribes were also (with a few exceptions not relevant here) made subject to suit in state courts.  25 U.S.C. § 1725(a); Me. Rev. Stat. Ann. tit. 30 § 6206(2).  And a central provision of the state statute codifying the settlement contains both a general rule and a key qualification:

> Except as otherwise provided in this Act, the Passamaquoddy Tribe and the Penobscot Nation, within their respective Indian territories, shall have, exercise and enjoy all the rights, privileges, powers and immunities, . . . and shall be subject to all the duties, obligations, liabilities and limitations of a municipality of and subject to the laws of the State, provided, however, that internal tribal matters, including membership in the respective tribe or nation, the right to reside within the respective Indian territories, tribal organization, tribal government, tribal elections and the use or disposition of

---

[2]The story is recounted in detail elsewhere.  See Great N. Paper, 770 A.2d at 581-85; H.R. Rep. No. 96-1353, at 11-20 (1980), reprinted in 1980 U.S.C.C.A.N. 3786, 3787-96.

>           settlement fund income shall not be subject
>           to regulation by the State.

Me. Rev. Stat. Ann. tit. 30 § 6206(1).

In the federal Settlement Act, Congress did not expressly include the provision just quoted; but the Settlement Act did state, as "a purpose" of the statute, Congress' intent "to ratify" the Maine Implementing Act "which defines" the relationship between the State of Maine and the Tribes. 25 U.S.C. § 1721(b)(3). This court has assumed, albeit without extensive discussion, that the internal affairs limitation on state authority in the Maine Implementing Act is also an overriding _federal_ limitation on Maine authority over the Tribes. _Akins_ v. _Penobscot Nation_, 130 F.3d 482, 485 (1st Cir. 1997); _see also_ 25 U.S.C. § 1735. The companies do not dispute that premise in this case.

This background brings us to the jurisdictional issue decided by the district court. The Tribes, in bringing their federal suit, based their claim of jurisdiction on the premise that their suit "arises under" federal law within the meaning of sections 1331 and 1362. In the Tribes' view, the controlling federal issue in the lawsuit is whether the internal affairs limitation is violated by applying the Maine Access Act to require the Tribes to produce the documents sought. The district court assumed _arguendo_ that the internal affairs

-8-

limitation was a creature of federal as well as state law. Penobscot I, 106 F. Supp. 2d at 83.

But, as the district court pointed out in its very able decision, Penobscot I, 106 F. Supp. 2d at 82, it is not enough to satisfy traditional "arising under" jurisdiction under section 1331 that a case involve a federal issue. Although this would certainly satisfy Article III, the Supreme Court has read the identically-worded statutory grant more narrowly, Verlinden B.V. v. Cent. Bank of Nigeria, 461 U.S. 480, 494-95 (1983), and has, for some time, required that it be apparent from the face of the plaintiff's complaint either that a cause of action arise under federal law, Am. Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 259-60 (1916), or at least (in some cases) that a traditional state-law cause of action (e.g., a tort or contract claim) present an important federal issue.

This latter exception, often associated with Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 201-02 (1921),[3] might include a case in which a state-law contract claim rests on a federal regulatory requirement. E.g., Price v. Pierce, 823 F.2d 1114, 1120-21 (7th Cir. 1987), cert. denied, 485 U.S. 960

---

[3]Although the Supreme Court has cited Smith with approval, its present scope remains in some doubt. See Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808-10 & n.5, 813-15 & n.12 (1986); Franchise Tax Board v. Constr. Laborers Vacation Trust, 463 U.S. 1, 9 (1983).

(1988).  This circuit treats <u>Smith</u> as good law but as limited to cases where an important federal issue is a central element in the state claim.  <u>Almond</u> v. <u>Capital Props., Inc.</u>, 212 F.3d 20, 23-24 & nn.2-3 (1st Cir. 2000).  The Tribes in this case do not rely on <u>Smith</u>.

In all events, there remains an overriding requirement that the federal claim or issue appear on the face of "a well [<u>i.e.</u>, properly] pleaded complaint," so that federal jurisdiction  is absent where the federal issue would arise only as a defense to a state cause of action.  <u>Louisville & Nashville R.R. Co.</u> v. <u>Mottley</u>, 211 U.S. 149, 153-54 (1908).  As a settled corollary, the restriction cannot be avoided by having the beneficiary of the defense assert the defense preemptively in a claim for declaratory or injunctive relief.[4]  This is just what the district court said that the Tribes were attempting to do. <u>Penobscot I</u>, 106 F. Supp. 2d at 82-83; <u>Penobscot II</u>, 116 F. Supp. 2d at 203-04.

The district court's treatment of the issue under section 1331 is straightforward and, with one possible

---

[4]<u>Franchise Tax Board</u>, 463 U.S. at 16; <u>Pub. Serv. Comm'n</u> v. <u>Wycoff</u>, 344 U.S. 237, 248 (1952);  <u>Skelly Oil Co.</u> v. <u>Phillips Petroleum Co.</u>, 339 U.S. 667, 671-74 (1950);  <u>Playboy Enters., Inc.</u> v. <u>Pub. Serv. Comm'n</u>, 906 F.2d 25, 29-31 (1st Cir.), <u>cert. denied sub nom. Rivera Cruz</u> v. <u>Playboy Enters., Inc.</u>, 498 U.S. 959 (1990).

qualification as to nomenclature, arguably correct.  The qualification is that under <u>Bell</u> v. <u>Hood</u>, 327 U.S. 678, 685 (1946), and its progeny, the Supreme Court has often said that a <u>colorable</u> claim of a federal cause of action will confer subject matter jurisdiction even though the claim itself may fail as a matter of law on further examination.[5]  On this view, the Tribes' suit, <u>if</u> colorably federal, would be better viewed as dismissed for failure to state a federal claim after "jurisdiction" to decide that issue had been established.  <u>See</u> <u>Romero</u> v. <u>Int'l Terminal Operating Co.</u>, 358 U.S. 354, 359 (1959).

But is this a case where there is a federal claim? Certainly nothing in the Settlement Act explicitly creates a federal right for the Tribes to sue to enforce what is at most an implicitly-adopted federal limitation on state power that could easily be asserted as a defense in a state proceeding. The creation of private causes of action by implication from federal statutes used to be a cottage industry in the Supreme Court, <u>e.g.</u>, <u>J.I. Case Co.</u> v. <u>Borak</u>, 377 U.S. 426, 433-34 (1964), but it is now less favored, <u>see</u>  <u>Karahalios</u> v. <u>Nat'l</u>

---

[5]<u>See, e.g.</u>, <u>Steel Co.</u> v. <u>Citizens for a Better Env't</u>, 523 U.S. 83, 89 (1998); <u>Jackson Transit Auth.</u> v. <u>Local Div'n 1285, Amalgamated Transit Union</u>, 457 U.S. 15, 21 n.6 (1982); <u>Oneida Indian Nation</u> v. <u>County of Oneida</u>, 414 U.S. 661, 666-67 (1974).

Fed'n of Fed. Employees, 489 U.S. 527, 536 (1989); Touche Ross & Co. v. Redington, 442 U.S. 560, 576-78 (1979).

Especially in Indian cases, the Supreme Court has sometimes found federal rights present--or at least arguably present--out of a tradition of federal regulation in the area. See White Mountain Apache Tribe v. Bracker, 448 U.S. 136, 143-44 (1980); Oneida Indian Nation v. County of Oneida, 414 U.S. 661, 677 (1974); see also Felix S. Cohen, Handbook of Federal Indian Law 270-79 (1982 ed.). At the same time, the Maine tribes are not treated like most other tribes but are subject to extensive state regulation agreed to by Congress. And both of the cases mainly relied upon by the Tribes for section 1331 jurisdiction in this case are distinguishable on their facts.[6]

A further complication exists. In this case the Tribes say that even if section 1331 does not support jurisdiction, section 1362 will do so. The "arising under" language in the two statutes is parallel; and the purpose of section 1362 was probably just to confer federal jurisdiction where it otherwise would exist over Indian cases without regard to the amount-in-

---

[6]Nat'l Farmers Union Ins. Cos. v. Crow Tribe, 471 U.S. 845, 853 (1985) (non-Indian plaintiff's claim that federal law bars Indian tribal court from enforcing a default judgment against it arguably arises under federal law to extent sufficient to establish jurisdiction); Oneida Indian Nation, 414 U.S. at 666-67 (Indian claims of right to land in New York based on federal treaties and statutes).

controversy requirement that governed section 1331 at the time (but has been since repealed). See Blatchford v. Native Vill. of Noatak, 501 U.S. 775, 784 (1991).  Yet, the Supreme Court has not settled definitively the question whether section 1362 reaches any further, and if so, how far, beyond section 1331. See Blatchford, 501 U.S. at 784-85; Moe v. Confederated Salish & Kootenai Tribes, 425 U.S. 463, 472-75 (1976).

Because of such uncertainties, we are reluctant (despite the urging of the district court that we clear up the matter) to decide in advance of necessity whether a federal claim can be conjured out of a lawsuit by the Tribes asserting that the threatened actions violate the internal affairs limitation contained in Maine law and purportedly ratified by a federal statute.[7]  Perhaps there is not even a single answer to this question--it could conceivably turn on the circumstances. See Penobscot I, 106 F. Supp. 2d at 83 n.4.  In all events, no

---

[7]The Tribes refer extensively to this Court's recent decision
in Penobscot Nation v. Fellencer, 164 F.3d 706, 713 (1st Cir.), cert. denied, 527 U.S. 1022 (1999).  We held there that the Penobscot Nation's decision, as employer, to fire a non-Indian community health nurse was an "internal tribal matter" and enjoined a suit brought by the discharged employee in state court alleging discrimination under the Maine Human Rights Act, Me. Rev. Stat. Ann. tit. 5, § 4551 et seq. (West 1998).  As the district judge noted in this case, Penobscot II, 116 F. Supp. 2d at 204 & n.5, the question of subject matter jurisdiction was not raised by the parties or the court in that case, so our decision did not resolve the jurisdictional issue.

answer is needed in this case because, either way, the federal court can grant the Tribes no relief beyond what the state's highest court has decreed.

Where pending state- and federal-court suits involve the same underlying dispute, res judicata principles usually give the race to the first court to decide the merits. A federal court is (in general) bound to give the same respect to a Maine judgment that would be given to it by Maine courts. 28 U.S.C. § 1738 (1994); Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984). This is true regardless whether the state-court decision involves federal or state law. Cruz v. Melecio, 204 F.3d 14, 18 (1st Cir. 2000). Here, Maine courts would be bound to give res judicata effect to the May 1 decision of the Maine Supreme Judicial Court.

In Maine, as in most jurisdictions, the pertinent branch of res judicata, collateral estoppel (now often called issue preclusion), provides that issues actually litigated, decided, and necessary to a final judgment are binding in future litigation between the same parties. Morton v. Schneider, 612 A.2d 1285, 1286 (Me. 1992); see also Restatement (Second) of Judgments § 27 (1982). None of the exceptions in Maine law even arguably apply in this case. See Mut. Fire Ins. Co. v. Richardson, 640 A.2d 205, 208-09 (Me. 1998). Thus, unless there

-14-

is some overriding federal exception, the district court would be bound to follow the Supreme Judicial Court's resolution of the central issue, namely, how the internal affairs limitation applies to the requested documents.

The Tribes do invoke a supposed federal exception to res judicata for which several cases are cited. The gist of the suggested exception is that matters involving "controversies about state power over Indian tribes" are so sensitive and so suffused with a federal interest that they deserve special treatment. In substance, the Tribes are urging that res judicata doctrine be ignored and that a federal court routinely reexamine the merits even in the teeth of a prior state-court determination. Most of the cases cited by the Tribes do not even remotely support such an exception.

The only case warranting discussion is the Tenth Circuit's decision in Kiowa Indian Tribe v. Hoover, 150 F.3d 1163 (10th Cir. 1998). There, a judgment creditor with a state-court judgment against the Kiowa Tribe on promissory notes obtained state-court authority to garnish tribal revenues, and the Tribe brought an action in federal court under section 1983, 42 U.S.C. § 1983 (Supp. II 1996), to enjoin the garnishment. Id. at 1168. The district court dismissed the action under the Rooker-Feldman doctrine, something of a cousin to res judicata.

See <u>D.C. Court of Appeals</u> v. <u>Feldman</u>, 460 U.S. 462, 476, 483-86 & n.16 (1983); <u>Rooker</u> v. <u>Fid. Trust Co.</u>, 263 U.S. 413, 415-16 (1923). The appeals court reversed, holding that the state judgment did not resolve the matter.

Whether <u>Kiowa Tribe</u> was rightly decided or not, it is completely distinguishable. The Tenth Circuit viewed the ongoing state garnishment proceeding, under attack in the section 1983 action, as "separable from and collateral to" the state-court final judgment against the Kiowa Tribe. 150 F.3d at 1171. Here, no such separation exists: the Tribes' theory is that the internal affairs limitation affords complete protection for all the documents sought; the final judgment of the Maine Supreme Judicial Court decided precisely this issue but held that some of the documents were protected and others were not, <u>see</u> 770 A.2d at 590. Certainly, nothing in <u>this</u> state decision is so implausible as to suggest the need for independent federal reexamination.

On the premise of <u>Akins</u>, 130 F.3d at 485, this is ultimately a federal issue, and if so, the Tribes may request <u>certiorari</u> in the United States Supreme Court, as they are apparently seeking to do. The Supreme Court is entitled to review a state-court decision that decides a federal issue even if the action is one that could not have been brought in a

-16-

federal district court under statutory "arising under" jurisdiction. 28 U.S.C. § 1257 (1994). If the Supreme Court does take the case and decides it differently, then all the relief that the Tribes seek would be furnished on remand in the state system.

There is one loose end. In Steel Co. v. Citizens for a Better Environment, 523 U.S. 83 (1998), a plurality of the Supreme Court disapproved the (until then) common practice by which lower federal courts sometimes bypass jurisdictional questions and resolve the merits where the result would be the same however the jurisdictional question were decided. Id. at 101-02. It is not clear how firmly the Steel Co. plurality rule is endorsed by a majority of the Court, see, e.g., id. at 110-11 (O'Connor, J., concurring, joined by Kennedy, J.); id. at 111-12 (Breyer, J., concurring in part and concurring in the judgment), or how far Steel Co. applies when the "jurisdictional" objection is something less fundamental than a doubt as to Article III jurisdiction. See United States v. Woods, 210 F.3d 70, 74 & n.2 (1st Cir. 2000); Parella v. Ret. Bd. of R.I. Employees' Ret. Sys., 173 F.3d 46, 53-54 (1st Cir. 1999).

However these questions may be answered, Steel Co. is no bar to our disposition. The Steel Co. limitation is fundamentally an objection to deciding "the merits" where

jurisdiction is lacking.  <u>See, e.g.</u>, 523 U.S. at 101.  Here, without reaching the merits, we simply conclude that the Maine judgment, binding under 28 U.S.C. § 1738, would prevent the district court from affording any different relief.  <u>Steel Co.</u>'s underlying concern is not implicated.  This spares us the need to explore further whether under <u>Bell</u> v. <u>Hood</u>, there is a sufficiently colorable federal claim to confer subject matter jurisdiction, an outcome that would also make <u>Steel Co.</u> inapplicable.

Accordingly, regardless whether the district court had jurisdiction or whether a federal cause of action is presented, the intervening decision of the Maine Supreme Judicial Court forecloses on <u>res judicata</u> grounds the broader relief sought by the Tribes and makes the present federal suit superfluous.  On this ground, the judgement of the district court is <u>affirmed</u>.  Abstention requests, urged by the State of Maine as intervenor, need not be considered.

<u>It is so ordered</u>.