Jerry **WIENER**, as the Building Inspector and Zoning Officer of the Town of Aquinnah, Plaintiff,

v.

**WAMPANOAG AQUINNAH SHELLFISH HATCHERY CORPORATION, and WAMPANOAG TRIBAL COUNCIL OF GAY HEAD, INC. (AQUINNAH)**, Defendants.

No. CIV.A.01–10924–DPW.

United States District Court, D. Massachusetts.

Sept. 30, 2002.

Ronald H. Rappaport, Michael A. Goldsmith, Reynolds Rappaport & Kaplan, Edgartown, MA, for Plaintiff.

Conly J. Schulte, Monteau, Peebles, Evans & Marks, L.L.P., Omaha, NE, Robert F. Mills, Wynn & Wynn, P.C., Hyannis, MA, for Defendants.

*MEMORANDUM AND ORDER*

WOODLOCK, District Judge.

The parties in this case seek a determination regarding application of state and local zoning provisions to land use by a federally recognized Native American tribe. The issue is framed by a complaint, initially brought in the state court, commencing a local zoning enforcement action. The complaint anticipated questions of federal law. The defendant tribe pressed those federal questions in its answer and counterclaims and removed the case to this court on grounds of federal question jurisdiction.

There is a threshold procedural problem presented by these pleadings: whether this court is the proper forum to resolve

the parties' dispute when the questions of federal law were anticipated in the complaint but not put in issue directly until the tribe raised them by defense and counterclaim. Having determined that under the "well pleaded complaint rule" this court may not properly resolve the dispute presented in this case, I will remand the matter to the state court.

## I. BACKGROUND

Plaintiff Jerry Wiener, in his capacity as the Building Inspector and Zoning Officer of the town of Aquinnah, Massachusetts (the "Town," formerly known as the town of Gay Head) filed this action in state court seeking enforcement [1] of town zoning law against the Wampanoag Tribal Council of Gay Head, Inc. (Aquinnah) (the "Tribe"), a federally recognized tribe of Native Americans, and its Shellfish Hatchery Corporation.[2]

The dispute arises from the Tribe's efforts to construct a shed and pier platform on the Cook Lands, a coastal area of 7.2 acres bordering Menemsha Pond, at the western tip of Martha's Vineyard, Massachusetts. The purpose of the shed and the pier platform is to facilitate operations of a shellfish hatchery constructed by the Tribe.

The Cook Lands were conveyed by the Town to the federal government in June 1992, to be held in trust for the Tribe, pursuant to a 1983 settlement agreement (the "Settlement Agreement") between the Town and the Tribe that was effectuated by later state and federal enactments.[3] At issue is the manner in which construction on the Cook Lands by the Tribe remains subject to the Town's zoning by-law, promulgated under authority of Mass. Gen. Laws ch. 40A.[4]

Before constructing the shellfish hatchery, the Tribe applied for and was issued the various permits required by the Town's zoning by-law. But, for the planned construction of the shed and the pier platform, the Tribe instead followed its own permitting procedures, set forth in a tribal land use ordinance adopted in May 1999. The Tribe commenced building the shed and the pier platform in March 2001. As the Town's zoning enforcement officer, Wiener initially challenged the Tribe's decision to proceed without town authorization through a cease and desist order and then filed this action in the Massachusetts Superior Court from which the Tribe removed the case to this court.

Wiener seeks an injunction against further construction of the shed and the pier

1. Although the complaint makes no reference to a specific statutory basis for the action, the case appears to be the familiar enforcement proceeding authorized under the Massachusetts Zoning Act, Mass. Gen. Laws ch. 40A, § 7.

2. Unless otherwise noted, I will use "the Tribe" to denote both of the separately named defendants, because the Shellfish Hatchery Corporation is acknowledged to be an extension of the Tribal Council.

3. The Massachusetts legislature passed "An Act to Implement the Settlement of Gay Head Indian Land Claims" in September 1985 (the "State Implementing Act"). 1985 Mass. Acts ch. 277. Following acknowledgment of the Tribe's status as an historical Indian Tribe by

the Secretary of the Interior in February 1987, Congress conferred federal recognition upon the Tribe and confirmed the terms of the Settlement Agreement in the "Wampanoag Tribal Council of Gay Head, Inc., Indian Claims Settlement Act of 1987," codified at 25 U.S.C. § 1771, *et seq.*, (the "Federal Wampanoag Settlement Act.")

4. The Tribe does not dispute that the substantive provisions of the Massachusetts Zoning Act and the Town's zoning by-law—at least as they existed in 1983, when the Settlement Agreement was executed—are applicable to the Cook Lands. Rather, the Tribe contends that this substantive law must be applied by the Tribe's own regulatory and review procedures.

platform until the Tribe has obtained permits required by the Town's zoning by-law. He also seeks a supporting declaration regarding the extent to which the Tribe and its Shellfish Hatchery Corporation are subject to town land-use law. He cited the "Wampanoag Tribal Council of Gay Head, Inc., Indian Claims Settlement Act of 1987," codified at 25 U.S.C. § 1771, *et seq.,* (the "Federal Wampanoag Settlement Act"), as a source for the exercise of authority by the Town over the Cook Lands. In its answer, the Tribe counterclaimed seeking declaratory and injunctive relief establishing (i) its sovereign immunity from Wiener's suit, (ii) that the Town and Tribe share concurrent jurisdiction over

the Cook Lands, and (iii) that the Tribe exercises inherent and federal rights of self-government.

## II. SUBJECT MATTER JURISDICTION

I must confront at the threshold, the issue—not initially contested by the parties [5] nor vigorously pursued by the plaintiff even after I raised the problem at the hearing on this matter [6]—whether removal from state court, under 28 U.S.C. § 1441, was proper. In order to be removable to federal court, an action must be one over which a federal court could have exercised original jurisdiction. 28 U.S.C. § 1441(b). Under 28 U.S.C. § 1331 [7], the federal dis-

---

5. In his initial memorandum in support of his motion for summary judgment, Weiner contended that "this Court has subject matter over this action" referencing in support the Tribe's counterclaim which, he noted, "seeks an injunction and a declaration that, as a matter of federal law, the Tribe has sovereign immunity from being sued by the Building Inspector." Given the plaintiff's concession, the Tribe, which removed the action on the basis that interpretation of the Federal Wampanoag Settlement Act and the immunity of the Tribe from suit involved federal questions over which this court has jurisdiction under 28 U.S.C. § 1331, did not discuss jurisdictional issues in its initial summary judgment briefing.

6. At the hearing on summary judgment, I raised the jurisdictional issue, expressing reservations about this court's authority to hear the matter in light of the well-pleaded complaint rule. I directed the parties' attention to several cases that discussed the question and invited further briefing on the jurisdictional issue. The Tribe responded with a thorough memorandum arguing in support of federal question jurisdiction. Plaintiff's counsel responded with a three-paragraph letter reporting that they had read the cases I had directed to their attention and had now come to the view "that there is no Federal jurisdiction." Nevertheless, while agreeing remand would be appropriate, they also reported that "we did not contest the removal, and do not object to this Court retaining jur-

isdiction...." Of course, the plaintiff's accommodating acquiescence in the retention of jurisdiction by this court cannot confer jurisdiction. I recognize that the jurisdiction of federal courts—as constrained by the well-pleaded complaint rule—to hear disputes concerning Native American tribes is frequently left unaddressed, often because it is not raised. *See Penobscot Nation v. Georgia–Pacific Corp.,* 254 F.3d 317, 323 n. 7 (1st Cir.2001) *("Penobscot III"); see also Wampanoag Tribe of Gay Head (Aquinnah) v. Mass. Comm'n Against Discrimination,* 63 F.Supp.2d 119 (D.Mass.1999). Irrespective of the vigor with which parties contest jurisdictional issues, however, it is the independent obligation of the court to assure itself it has jurisdiction in the first place. *American Policyholders Ins. Co. v. Nyacol Prods. Inc.,* 989 F.2d 1256, 1258 (1st Cir.1993), *cert. denied,* 510 U.S. 1040, 114 S.Ct. 682, 126 L.Ed.2d 650 (1994).

7. The Tribe, as defendant, did not by definition commence the instant action and, consequently, the case is not within the literal scope of 28 U.S.C. § 1362, which addresses actions brought by Indian Tribes. Nevertheless, I note that my analysis would seem to apply equally to federal subject matter jurisdiction both under 28 U.S.C. § 1331, the general federal jurisdiction provision, and under 28 U.S.C. § 1362. The "arising under" language found in § 1362 parallels that language in § 1331. *Penobscot III,* 254 F.3d at 322. The Supreme Court, however, has not settled

trict courts have subject matter jurisdiction over a case when the claim "arises under" federal law.

At the outset, I note that in its supplemental briefing, the defendant Tribe does not rely upon an assertion of tribal sovereign immunity as the federal "arising under" grounds for removal to the federal court. Given governing case law, this position seems prudent and well-founded. Nevertheless, an initial discussion of removal relying upon tribal sovereign immunity will be useful to an understanding why I ultimately find removal here inappropriate.

█ As a general proposition, for removal to be proper, the basis for federal jurisdiction must be found on the face of the plaintiff's "well-pleaded complaint." *Louisville & Nashville R.R. Co. v. Mottley,* 211 U.S. 149, 153–54, 29 S.Ct. 42, 53 L.Ed. 126 (1908). The "well-pleaded complaint" doctrine, as it has developed, is not without its analytical difficulties. *See generally* Arthur R. Miller, *Artful Pleading: A Doctrine in Search of Definition,* 76 Tex. L.Rev. 1781 (1998). But it is settled that "a federal court does not have original jurisdiction over a case in which the complaint presents a state-law cause of action". *Franchise Tax Bd. of the State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.,* 463 U.S. 1, 10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). This lack of original jurisdiction is applicable even if the complaint "also asserts that federal law deprives the defendant of a defense he may raise ... or that a federal defense the defendant may raise is not sufficient to defeat the claim." *Id.*

█ The Supreme Court has specifically held that the defense of tribal sovereign immunity does not itself present a federal question sufficient to overcome the well-pleaded complaint rule. *Oklahoma Tax Comm'n v. Graham,* 489 U.S. 838, 840–42, 109 S.Ct. 1519, 103 L.Ed.2d 924 (1989). "Tribal immunity may provide a federal defense ... But it has long been settled that the existence of federal immunity to the claims asserted does not convert a suit otherwise arising under state law into one which, in the statutory sense, arises under federal law." *Oklahoma Tax Comm'n,* 489 U.S. at 841, 109 S.Ct. 1519 (citing *Puyallup Tribe, Inc. v. Wash. Game Dep't,* 433 U.S. 165, 97 S.Ct. 2616, 53 L.Ed.2d 667 (1977) and *Gully v. First Nat'l Bank,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936)).

Confronting an issue of federal court jurisdiction in a case with parallels to this, Judge Hornby recently held that federal jurisdiction did not exist on the basis of a complaint anticipating a legal dispute concerning the federal legislation governing state authority over tribal affairs. *Penobscot Nation v. Georgia–Pacific Corp.,* 106 F.Supp.2d 81 (D.Me.2000) (*"Penobscot I "*), *reconsideration denied,* 116 F.Supp.2d 201 (D.Me.2000) (*"Penobscot II "*), *rev'd on other grounds,* 254 F.3d 317 (1st Cir.2001) (*"Penobscot III "*).

In *Penobscot I,* the plaintiff Indian tribes sought injunctive and declaratory relief in federal court to bar defendant paper companies from bringing a state court lawsuit under a state law that would provide access to tribal documents. The tribes contended that a settlement between Maine and the tribes, governed by the federal Maine Indian Claims Settle-

---

the issue whether § 1362 extends further than § 1331. *Blatchford v. Native Vill. of Noatak,* 501 U.S. 775, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991). And the First Circuit, in *Penobscot III,* was "reluctant ... to decide in advance of necessity whether a federal claim

can be conjured out of a lawsuit by the Tribes asserting that the threatened actions violate the internal affairs limitation contained in Maine law and purportedly ratified by a federal statute." *Id.* at 323. Similarly, I do not decide the scope of § 1362 in this case.

ment Act and the State of Maine's Implementing Act, precluded state regulation of "internal tribe matters." Judge Hornby found that the tribes' "potential defense to the paper companies' state lawsuit" did not provide a basis for federal court jurisdiction: "The tribes could not remove the paper companies' lawsuit on the basis of their federal defense, and they cannot accomplish the same goal by preemptively filing their federal defense here first." *Id.* at 83.

On appeal, the First Circuit observed that "whether the Tribes' claims 'arise under' federal law . . . is a difficult question." *Penobscot III*, 254 F.3d at 320. Assuming that the internal affairs limitation pressed by the tribes was a "creature of federal as well as state law," the Court of Appeals nevertheless agreed with Judge Hornby's determination that "it is not enough to satisfy traditional 'arising under' jurisdiction under section 1331 that a case involve a federal issue." *Id.* at 321. The First Circuit characterized Judge Hornby's reasoning as "straight forward" and "arguably

correct," but ultimately did not resolve the issue of jurisdiction because it was able to dispose of the case on *res judicata* grounds. *Id.* at 322.

▮ I, however, cannot avoid the jurisdictional question in this case because no supervening ground of decision has been presented. Although the Tribe is a defendant and not a plaintiff before me, I am satisfied that the analysis developed by Judge Hornby in *Penobscot I* demonstrates that no federal jurisdiction exists here. Anticipation of the Tribes' federal claims in plaintiff's complaint for injunctive and declaratory relief does not present a well-pleaded complaint for the purposes of federal jurisdiction.[8]

While the Tribe understandably chooses, in light of *Oklahoma Tax Commission*, not to rely upon the defense of tribal sovereign immunity to overcome the well-pleaded complaint rule, it argues vigorously that the Federal Wampanoag Settlement Act raises a sufficient federal question for that purpose.[9] In this regard, the Tribe looks

---

8. As a corollary matter, I note federal jurisdiction cannot be found here on grounds that a federal cause of action may be present in the dispute. In *Penobscot III*, the First Circuit observed that "a colorable claim of a federal cause of action" can confer subject matter jurisdiction "even though the claim itself may fail as a matter of law on further examination." 254 F.3d at 322 (citing *Bell v. Hood*, 327 U.S. 678, 685, 66 S.Ct. 773, 90 L.Ed. 939 (1946)). In *Penobscot III*, the court refrained from deciding whether there was "a sufficiently colorable federal claim to confer subject matter jurisdiction." 254 F.3d at 325. The First Circuit observed in its own discussion of *Bell*, however, that the federal Maine Claims Settlement Act lacked an explicit private right of action to sue to "enforce what is at most an implicitly-adopted federal limitation on state power." *Id.* at 322. And, the court noted, the Supreme Court currently does not favor creating implicit private rights of action. Id. A similar circumstance is present here. There is no private right of action in the Federal Wampanoag Settlement Act to

sue to enforce what is not so much an implicitly adopted congressional limitation on Massachusetts state power as a sanction for its exercise.

9. The Tribe also argues that the congressional approval of the settlement between the Tribe and the State of Massachusetts is analogous to an agreement under the Compact Clause of the United States Constitution § 10, cl. 3, an agreement of a type recognized as presenting a federal question. *Cuyler v. Adams,* 449 U.S. 433, 438, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981). Whether this analogy suggests some special independent vitality as a federal question for agreements between states and tribes need not be decided here because it adds nothing to federal question analysis. The relevant "Compact" upon which the Tribe relies is the Federal Wampanoag Settlement Act, the same enactment which the Tribe argues provides an adequate federal question in its own right under the Constitution's Indian Commerce Clause, U.S. Const. Art. I, § 8, cl. 3.

to the principle that even if federal jurisdiction cannot be found on the face of the plaintiff's well-pleaded complaint, it may still exist "where the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Franchise Tax Bd.*, 463 U.S. at 9, 103 S.Ct. 2841 (citing *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921)).

■ The contours of this principle, which has come to be known as the *Smith* doctrine, are undefined. Generally speaking, ·the doctrine covers only those cases where "some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims, or that one or the other claim is 'really' one of federal law." *Franchise Tax Bd.*, 463 U.S. at 13, 103 S.Ct. 2841. Thus, a *Smith* inquiry is not an "automatic test," but rather invites "careful judgments about the exercise of federal judicial power in an area of uncertain ·jurisdiction." *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 814, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). *See generally* Note, *Mr. Smith Goes to Federal Court: Federal Question Jurisdiction Over State Law Claims Post-Merrell Dow*, 115 Harv. L.Rev. 2272 (2002).

Of course, the First Circuit in *Almond v. Capital Props.*, 212 F.3d 20, 23–24 (1st Cir.2000) deemed "almost unanswerable" the question what kind of federal issue the Supreme Court would regard as "sufficiently important" for purposes of conferring federal jurisdiction over a claim with a state remedy. Nonetheless, a reading of the Federal Wampanoag Settlement Act,

which governs the application of state and local law to the Tribe and which the Tribe relies on as a basis for invoking the *Smith* doctrine, demonstrates that it constitutes federal law neither sufficiently substantial nor necessary, as contemplated by the *Smith* doctrine, to the plaintiff's claim for injunctive or declaratory relief to overcome the well-pleaded complaint rule.

The analytical problem here is somewhat like that of *renvoi* in international law. Federal law through the Federal Wampanoag Settlement Act looks to state law for the relevant rules.

■ The Federal Wampanoag Settlement Act directs that:

Except as otherwise expressly provided in this Act or in the State Implementing Act, the settlement of lands and any other land that may now or hereafter be owned by or held in trust for any Indian tribe or entity in the town of Gay Head, Massachusetts, shall be subject to the civil and criminal laws, ordinances, and jurisdiction of the Commonwealth of Massachusetts and the town of Gay Head, Massachusetts (including those laws and regulations which prohibit or regulate the conduct of bingo or any other game of chance).

25 U.S.C. § 1771g. Because the federal act at issue here directs consideration of state and local law, not federal law, to resolve the dispute between the parties, the federal issue involved cannot be said to be sufficiently substantial or necessary to invoke *Smith*.[10] Pertinent here, as in *Penobscot II*, 116 F.Supp.2d at 204, is Justice Cardozo's observation:

10. Similarly, the defense of federal preemption, even if it .could be said to have been anticipated in the plaintiff's complaint, could not confer federal jurisdiction upon a state law claim. *Caterpillar, Inc. v. Cecil Williams*, 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (citing *Franchise Tax Bd.*, 463 U.S. at 12, 103 S.Ct. 2841). The principal exception to this settled rule does not apply here. A claim "purportedly based on [ ] pre-empted state law" is considered a federal claim where an "area of state law has been completely pre-

empted." *Caterpillar*, 482 U.S. at 393, 107 S.Ct. 2425 (citing *Franchise Tax Bd.*, 463 U.S. at 24, 103 S.Ct. 2841). The federal government has not completely preempted the field of Indian affairs. *Oklahoma Tax Comm'n*, 489 U.S. at 841–42, 109 S.Ct. 1519; *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 215, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987); *Penobscot III*, 254 F.3d, at 322. More particularly here, not only does federal law at issue not preempt the law of Massa-

"The federal nature of the right to be established is decisive—not the source of the authority to establish it." Here the right to be established is one created by the state. If that is so, it is unimportant that the federal consent is the source of state authority. To reach the underlying law we do not travel so far back.

*Gully v. First National Bank,* 299 U.S. 109, 116, 57 S.Ct. 96, 81 L.Ed. 70 (1936) (quoting *Puerto Rico v. Russell & Co.,* 288 U.S. 476, 483, 53 S.Ct. 447, 77 L.Ed. 903 (1933)).

It should go without saying that my decision is concerned only with whether this court can hear and decide this dispute given these pleadings. That I find this court may not provide such a forum imports no judgment on the proper construction of the sources of any authority for the plaintiff to pursue a zoning enforcement action under Massachusetts zoning law. A federal court confronting invocation of a state created cause of action for land use regulation in this setting may not, under the well-pleaded complaint rule, inquire further regarding the sources of any authority to invoke that procedure. I merely rule that exploration of the sources and their implications must be conducted in another forum.

### III. CONCLUSION

For the reasons set forth more fully above, I REMAND this case to the State Superior Court for Dukes County.[11]

chusetts, it actually directs that the land be subject in some fashion—precisely how is the question presented—to state and local law.

11. Following the hearing on the cross motions for summary judgment submitted by the parties in this matter, a group styling itself the "Taxpayers' Association of Gay Head (Aquinnah)" sought intervention in this case. Because I am remanding to the state court, I decline to address that motion. The state court should be left free to make its own judgment about intervention, particularly given the carefully developed standing and timeliness rules which govern participation in proceedings under Mass. Gen. Laws ch. 40A. Moreover, because 28 U.S.C. § 1447(d) would appear to preclude appeal of this decision to remand, based as it is on lack of subject matter jurisdiction, I have no occasion to consider the arguably more latitudinarian view the First Circuit takes with respect to participation by intervenors under these circumstances. *See generally Ruthardt v. United States,* 303 F.3d 375, 385–86 (1st Cir.2002).